UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ATLANTIC SPECIALTY INSURANCE                            CIVIL ACTION
COMPANY AND NICHOLAS CHAD
GONZALEZ

VERSUS                                                  NO. 15-570

PORTER, INC., D/B/A FORMULA                             SECTION "R" (4)
BOATS

## ORDER AND REASONS

Before the Court is Defendant Porter, Inc.'s motion in limine and
*Daubert* motion to strike the report of Plaintiffs' expert witness, Gary
Jones, and to prohibit Jones from testifying at trial.[1]  For the following
reasons, the Court DENIES defendant's motion.

## I.    BACKGROUND

This lawsuit arises out of a fire onboard the *Budget Bender*, a
recreational boat owned by plaintiff Nicholas Chad Gonzalez, that occurred
on or about December 21, 2013 and rendered the boat a total loss.   The boat
was insured by Atlantic Specialty Insurance Company, which paid Gonzalez

---

[1]      R. Doc. 26.

$280,000 on his insurance claim.  Plaintiffs assert claims against the boat's manufacturer, Porter, Inc., for redhibition, breach of contract, products liability, and negligence.[2]  Plaintiffs allege that the fire was caused by an electrical malfunction attributable to corroded wiring in the port side of the boat.[3]  According to plaintiffs, a gap along the edge of a wet bar in the boat's cockpit allowed water to flow downward and onto the wiring below, causing the corrosion.[4]  Plaintiffs allege that this corrosion caused a short circuit that energized wires, causing them to overheat and eventually ignite a fire.[5]  To support this theory, plaintiffs retained three experts: Captain Guy Plaisance, a marine surveyor; Gary Jones, a fire causation consultant; and Troy Little, an electrical engineer.[6]

Jones was assigned to conduct an origin and cause investigation of the fire.[7]  His first investigation of the boat occurred on January 3, 2014 and continued on January 9.[8]  Jones wrote a report on his initial investigation on

---

[2]     R. Doc. 1-2 at 3-4.
[3]     *Id.* at 2.
[4]     *Id.*
[5]     *Id.*
[6]     Defendant has also moved the Court to strike the reports of Little and Plaisance, to prohibit them from testifying, and to strike the "hose-test" video demonstrations prepared by Plaisance.  *See* R. Doc. 27 (Little); R. Doc. 29 (Plaisance).  The Court will address those motions separately.
[7]     R. Doc. 26-2 at 2.
[8]     *Id.*

January 31, 2014.[9]  Jones returned to the boat and conducted a joint scene investigation with representatives from both plaintiffs and defendant on March 12, 2014.[10]  Jones wrote a report on this investigation on March 17, 2014.[11]  Another joint investigation was held on July 17, 2014, and Jones wrote his final report on his investigations on August 11, 2014, noting at the end of the report that the file was now closed.[12]

Jones' first report begins with preliminary information like the location of the boat when the fire occurred, and how the boat receives electricity when it is moored.[13]  The report does note that the 125 volt power receptacle on the side of the boat showed "no obvious signs of fire involvement."[14]  Jones concludes that the fire originated in the starboard side of the sectional sofa in the aft cabin, but the ignition source of the fire was not determined.[15]  According to the report, potential ignition sources could be the fixed AC/DC wiring and Molex electrical connectors.[16]  Jones also notes that he considered "all possible fire cause theories," and excluded

---

[9]     R. Doc. 26-3 at 2.
[10]    *Id.*
[11]    *Id.*
[12]    R. Doc. 26-4 at 3.
[13]    R. Doc. 26-2 at 3.
[14]    *Id.*
[15]    *Id.* at 4.
[16]    *Id.*

3

"intentional human involvement" as a possible cause.[17]  Finally, Jones rules out a portable electric heater as a cause of the fire.[18]

Jones' second report shifted the focus away from the Molex connectors because removal of additional debris and the board that held the connectors revealed that the fire actually originated in the lower void space behind the sofa frame that housed the hull wiring harnesses.[19] Representatives of both sides agreed as to the origin of the fire.[20]  The report further noted that "localized adverse electrical activity was documented at the factory wiring harness to the blowers, speakers, and galvanic isolator."[21]  It concludes by stating that plaintiffs' expert Troy Little will be researching the causation link between "the fire in the aft cabin and the overheated connector in the engine compartment wiring harness," and that Jones' portion of the investigation is completed.[22]

Porter now moves the Court to exclude Jones' reports and to prohibit Jones from testifying.  Porter gives three arguments for exclusion: (1) that

---

[17]    *Id.* at 5.

[18]    *Id.* at 5-6.

[19]    R. Doc. 26-3 at 2.

[20]    *Id.*

[21]    *Id.*

[22]    *Id.* at 3.  Jones' third report solely reiterates conclusions stated in his previous reports and does not offer any new information.  *See* R. Doc. 26-4.

plaintiffs failed to submit an expert report on behalf of Jones; (2) that the documents that plaintiffs did submit do not to satisfy the technical requirements of Federal Rule of Civil Procedure 26 and this Court's scheduling order; and (3) that Jones does not base his proffered expert testimony on reliable data and sound methodologies, as required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Plaintiffs initially responded to defendant's Rule 26 arguments[23] but not its *Daubert* argument.  The Court ordered plaintiffs to address the *Daubert* issues.[24]  Plaintiffs did so, and defendant replied.[25]


## II.    LEGAL STANDARD

When expert testimony offered by one party is subject to a *Daubert* challenge, the Court must act as a "gatekeeper" under Federal Rule of Evidence 702.

A district court has considerable discretion to admit or exclude expert testimony under Rule 702.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir.

---

[23]    R. Doc. 35.
[24]    R. Doc. 50.
[25]    R. Doc. 66.

2000).   Rule 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."   509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony).   The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance.

First, the Court must determine whether the proffered expert testimony is reliable.   The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.   *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).   The reliability inquiry

requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590.

The Court in *Daubert* articulated a flexible, non-exhaustive, five-factor test to assess the reliability of an expert's methodology: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593-95. The Supreme Court has emphasized, however, that these factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593). Rather, district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. Courts have also considered whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying," *Daubert v. Merrell Dow Pharms., Inc.*,

43 F.3d 1311, 1317 (9th Cir. 1995), whether the expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994), and whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting," *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

The Court also considers this motion recognizing that this case involves a nonjury trial.  In *Daubert*, the Supreme Court's overriding concern was with the problem of exposing the jury to confusing and unreliable expert testimony.  *See* 509 U.S. at 595-97.  In the wake of *Daubert*, several courts have recognized that in the context of a bench trial, as is the case here, "the *Daubert* gatekeeping obligation is less pressing," because the gatekeeper and trier of fact are the same. *Volk v. United States*, 57 F.Supp.2d 888, 896 n.5 (N.D. Cal. 1999); *see also Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (explaining that in the context of a bench trial the *Daubert* standard must still be applied but the concerns about expert evidence misleading a jury "are of lesser import"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.").  Nevertheless, *Daubert* still applies in bench

8

trials, and this Court must still ensure that the proffered testimony is reliable. *See id.*

Expert testimony "must be reliable at each and every step or else it is inadmissible.  The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia.*"  *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted).  "Where the expert's opinion is based on insufficient information, the analysis is unreliable."  *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

In *Joiner*, the Supreme Court explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  522 U.S. at 146.  Rather, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Id.*; *see also LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 98 (5th Cir. 2010).

If the Court is satisfied that the expert's testimony is reliable, the Court must then determine whether the expert's analysis is relevant.  The question here is whether the reasoning or methodology "fits" the facts of the case and

will thereby assist the trier of fact to understand the evidence.  *See Daubert*, 509 U.S. at 591.  "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded.  *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (citing *Viterbo*, 826 F.2d at 422).

## III.   DISCUSSION

### A.   Motion to Strike

Before reaching the merits of defendant's *Daubert* motion, the Court will address defendant's argument that Jones' expert reports should be stricken because they do not comply with Federal Rule of Civil Procedure 26, and this Court's scheduling order, which requires that expert reports fully set forth "all matters about which [the expert witness] will testify and the basis therefor" and "be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than April 15, 2016."[26]   Rule 26(a)(2)(B) provides that, "unless otherwise stipulated or ordered by the court," a party must disclose its expert witnesses along with a written report prepared and signed by the witness that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's

---

[26]     R. Doc. 18.

> qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Because Jones' reports do not include many of these requirements, defendant argues the reports must be stricken.

Defendant's argument that plaintiff has violated Rule 26(a)(2)(B) fails to recognize that the Court has "otherwise stipulated or ordered" that an expert report must merely set forth "all matters about which they will testify and the basis therefor" and be delivered to defendant by April 15, 2016.[27] *See Knorr v. Dillard's Store Services, Inc.*, No. 04-3208, 2005 WL 2060905, at *2 (E.D. La. Aug, 22, 2005) (rejecting similar argument of technical noncompliance with Rule 26 because of Court's scheduling order). Jones' first and second reports sufficiently establish that he will be testifying as to the origin of the fire and the elimination of certain alternate causes of the fire.[28] Additionally, Jones' reports make clear that his conclusions are based on "a total analysis of the information collected during the investigation,"[29] which includes witness statements, physical evidence, examinations of char and burn patterns, analysis of heat intensity patterns, and other damage

---

[27] R. Doc. 18 at 2.
[28] *See generally* R. Doc. 26-2; R. Doc. 26-3.
[29] R. Doc. 26-3 at 3.

pattern analysis.[30]  Any confusion or questions that defendant had over the basis for Jones' conclusions could be addressed in a deposition or through other discovery means.  *See Kirkland v. Marriott International Inc.*, 416 F. Supp. 2d 480, 486 n. 2 (E.D. La. 2006) (refusing to strike report with information that was difficult to understand because information was clarified in subsequent deposition); *Stahl v. Novartis Pharmaceuticals Corp.*, No. 99-1048, 2000 WL 33915847, at *2 (E.D. La. Nov. 29, 2000) (same). Finally, defendant received Jones' reports in August 2015, well before the April 2016 deadline.[31] Therefore, Jones' reports are timely and adequately set forth the matters about which he will testify and the basis for his opinions.

Furthermore, although Jones' reports did not include information like his resume, his qualifications, his compensation, or a list of other cases in which he has testified as an expert, plaintiffs separately gave defendant documentation of Jones' compensation and his resume, which included his qualifications and a list of cases in which Jones has testified as an expert either at trial or by deposition.[32]  Defendant had all of this information before

---

[30]   R. Doc. 26-2 at 2-5.
[31]   R. Doc. 27-1 at 2.
[32]   R. Doc. 35-11.

Jones' deposition and was not prejudiced by the absence of this information from Jones' reports.

For the foregoing reasons, plaintiffs' technical noncompliance with Rule 26 does not warrant this Court's striking Jones' reports. *See Knorr*, 2005 WL 2060905 at *2.

### B.    *Daubert*

In addition to its Rule 26 argument, defendant argues that Jones' reports do not comply with the standards of Federal Rule of Evidence 702 and *Daubert*.    In support, defendant maintains that Jones should be excluded from testifying because he offers an opinion only as to the origin—rather than the cause—of the fire, and he made "no meaningful attempt to rule out other possible sources of the fire."[33]  Defendant argues that these failures are evidence that Jones did not follow the Scientific Method and National Fire Protection Association publication 921, *Guide for Fire and Explosion Investigations*.[34]   The Court is not persuaded by defendant's arguments.

---

[33]      R. Doc. 26-1 at 16.

[34]      *Id.*  Unlike its other *Daubert* motions in this case, defendant does not point to any specific action taken by Jones that does not comply with *NFPA 921*.  Jones first report states that he conducted his investigation consistent with the guidelines of *NFPA 921*, R. Doc. 26-2 at 2, and the steps detailed by his report are consistent with fire origin determination according to *NFPA 921*.  *See NFPA 921* at 187.

Defendant's only argument against the admission of Jones' opinion on the origin of the fire is that it is unnecessary, since defendant agrees with Jones on the origin of the fire.  The Court finds that Jones' opinion on the origin of the fire will assist the Court in understanding what happened in this case, and it will not exclude this opinion.

The Court likewise rejects defendant's argument that Jones' other testimony should be excluded because he made no meaningful effort to exclude other causes.  First, Jones excluded intentional human involvement as a cause of the fire, after reasonably considering the location of the origin area, the secured state of the cabin, and the seating arrangement within the cabin.[35]  Next, Jones addressed the possibility that a portable electric heater was the cause of the fire.  At the time of the fire, Gonzalez had left a portable heater turned on in the cockpit.[36]  Jones noted that the heater was not located in the area of the fire's origin, that it was field tested (by plugging it in to see if it still worked), and that it continued to operate normally.[37]  Based on these two facts, Jones excluded the heater as a cause of the fire.  Defendant nevertheless argues that Jones did not adequately eliminate the heater as a

---

[35]   R. Doc. 26-2 at 5

[36]   *Id.*

[37]   *Id.*

14

possible cause because the heater was plugged into an electrical circuit that was routed through the origin area.[38]

Jones' exclusion of the heater as a cause is reasonably based on reliable principles. Portable space heaters are a frequent cause of fires, *see* David L. Faigman, *et al.*, 5 *Modern Scientific Evidence* § 37:51 (2015-2016 ed.). Thus any proper examination of the fire on the *Budget Bender* would have to address the possibility that the heater was the cause. But *NFPA 921* notes that appliances that are not located in the area of origin can generally be excluded. *NFPA 921* at 257. This makes sense since appliances can start fires by heating nearby combustible material until a fire starts. As the heater was not in the area of origin, Jones reasonably excluded the possibility that the heater caused the fire. Additionally, that the heater was field tested after the fire and functioned normally suggests that there was no abnormal electrical activity in heater's wiring. Defendant's argument to the contrary can be addressed adequately through cross-examination. *Cole's Tool Works v. Am. Power Conversion Corp.*, No. 06-169, 2009 WL 1298236, at *3 (N.D. Miss. May 7, 2009) ("Any deficiencies in [the expert]'s methodology regarding the exclusion of other possible causes of the fire may be adequately addressed by means of cross-examination and impeachment.").

---

[38]    R. Doc. 27-1 at 17.

Further, defendant erroneously equates failing to exclude every possible alternative cause with failing to exclude any other possible causes. Clearly, Jones did exclude more than one potential cause, ruling out intentional human activity and the portable space heater. He did not purport to isolate the sole cause of the fire. Jones' exclusion only of certain potential causes, without offering an opinion on the actual cause of the fire, does not render his testimony inadmissible, since the limited opinions he offers have a sufficiently reliable basis. *See Cole's Tool Works*, 2009 WL 1298236, at *3.

## IV.   CONCLUSION

For the foregoing reasons, the Court is satisfied that the proffered testimony of Gary Jones is both reliable and relevant. Accordingly, the Court DENIES the motion to exclude the reports and expert testimony of Gary Jones.

New Orleans, Louisiana, this __20th__ day of October, 2016.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

16