UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY AND NICHOLAS CHAD GONZALEZ | CIVIL ACTION |
| VERSUS | NO. 15-570 |
| PORTER, INC., D/B/A FORMULA BOATS | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is Defendant Porter, Inc.'s motion in limine and *Daubert* motion to strike the report of plaintiffs' expert witness, Captain Guy Plaisance, and to prohibit Plaisance from testifying at trial.[1] Defendant additionally moves to strike certain "hose-test" demonstration videos prepared by Plaisance and to prohibit the videos from being introduced into evidence.[2] For the following reasons, the Court GRANTS defendant's motions.

## I.   BACKGROUND

This lawsuit arises out of a fire onboard the *Budget Bender*, a recreational boat owned by plaintiff Nicholas Chad Gonzalez. The fire

---

[1] R. Doc. 29.
[2] *Id.*

occurred on or about December 21, 2013 and rendered the boat a total loss. The boat was insured by Atlantic Specialty Insurance Company, which paid Gonzalez $280,000 on his insurance claim. Plaintiffs assert claims against the boat's manufacturer, Porter, Inc., for redhibition, breach of contract, products liability, and negligence.[3] Plaintiffs allege that the fire was caused by an electrical malfunction attributable to corroded wiring in the port side of the boat.[4] According to plaintiffs, a gap along the edge of a wet bar in the boat's cockpit allowed water to flow downward and onto the wiring below, causing the corrosion.[5] Plaintiffs allege that this corrosion caused a short circuit that energized wires, causing them to overheat and eventually ignite a fire.[6] To support this theory, plaintiffs retained three experts: Captain Guy Plaisance, a marine surveyor; Gary Jones, a fire causation consultant; and Troy Little, an electrical engineer.

On December 27, 2013, Captain Plaisance inspected the boat for the first time.[7] He returned for a follow-up inspection on January 9, 2014.[8] Plaisance wrote two summaries of his inspections for the plaintiffs on

---

[3] R. Doc. 1-2 at 3-4.
[4] *Id.* at 2.
[5] *Id.*
[6] *Id.*
[7] R. Doc. 29-1 at 2.
[8] *Id.*

December 31, 2013, and January 17, 2014, respectively.⁹ In April 2014, Plaisance conducted an additional investigation of the boat. This time, he conducted a "hose test," in which he placed a garden hose on the boat's wet bar and hosed it down to see if water leaked onto the electrical wiring harness below.¹⁰ Two years later, Plaisance conducted a similar test on a different boat named *Lost My Mind*, which is also manufactured by defendant and is similar to the *Budget Bender*.¹¹ Plaisance filmed both tests. On April 15, 2016, plaintiffs submitted Plaisance's expert report and the videos of the hose tests.¹²

Plaisance's report notes plaintiffs' theory that water entered the boat's electrical system and caused a short circuit.¹³ Plaisance reported that he performed two "hose tests" to test how water could intrude into the electrical system.¹⁴ From his tests, Plaisance reported that if the wet bar of the boat was exposed to water, the water would "flow to an opening at the outboard edge of the top and down a path . . . into the port forward machinery space."¹⁵

---

⁹    *Id.*
¹⁰   R. Doc. 29-2 at 2.
¹¹   *Id.*
¹²   R. Doc. 29-1 at 3.
¹³   R. Doc. 29-2 at 2.
¹⁴   *Id.* The methodology and substance of the hose tests, as well as their potential inadmissibility will be discussed below.
¹⁵   *Id.*

3

The water would then drip onto the "DC wiring harnesses directly below in the same area where terminal connections which shorted and melted are located."[16] Plaisance concluded that this type of water intrusion should not occur on a seaworthy vessel and that it was the result of a defective design by defendant.[17]

Porter seeks to exclude Plaisance's report and testimony because his report does not satisfy the technical requirements of Federal Rule of Civil Procedure 26 and this Court's scheduling order, and because Plaisance does not base his proffered expert testimony on reliable data and sound methodologies, as required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[18] Additionally, defendant seeks to exclude the "hose-test" videos filmed by Plaisance because they fail to simulate conditions substantially similar to those on the *Budget Bender* and because Plaisance did not provide critical information

---

[16] *Id.*
[17] *Id.* at 3.
[18] *See* R. Doc. 29-1.

4

regarding how the tests were conducted.[19] Plaintiffs responded on June 14, 2016,[20] and defendant replied.[21]

## II.  LEGAL STANDARD

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure

---

[19]  *Id.* at 4.  Defendant also argues that the hose-test videos risk unfair prejudice because of their potential to mislead the jury.  However, after this motion was filed, this Court granted defendant's motion to withdraw its demand for a jury trial.  R. Doc. 32.  As this case is now scheduled for a bench trial, this argument is moot.
[20]  R. Doc. 37.
[21]  R. Doc. 50.

5

that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance.

First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590.

The Court in *Daubert* articulated a flexible, non-exhaustive, five-factor test to assess the reliability of an expert's methodology: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the

technique or theory has been generally accepted in the scientific community. *Id.* at 593-95. The Supreme Court has emphasized, however, that these factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593). Rather, district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. Courts have also considered whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying," *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). They also have looked to whether the expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994), and whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

The Court also recognizes that this case involves a nonjury trial. In *Daubert*, the Supreme Court's overriding concern was with the problem of exposing the jury to confusing and unreliable expert testimony. *See* 509 U.S. at 595-97. In the wake of *Daubert*, several courts have observed that in the

context of a bench trial, the *Daubert* gatekeeping obligation is less urgent, because the gatekeeper and trier of fact are the same. *See, e.g.*, *Volk v. United States*, 57 F.Supp.2d 888, 896 n.5 (N.D. Cal. 1999); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (explaining that in a bench trial the *Daubert* standard must still be applied but the concerns about expert evidence misleading a jury "are of lesser import"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.").

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [finder of fact]'s consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Nonetheless, expert testimony "must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted). "Where the expert's opinion is based on

insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

In *Joiner*, the Supreme Court explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." 522 U.S. at 146. Rather, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*; *see also LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 98 (5th Cir. 2010).

If the Court is satisfied that the expert's testimony is reliable, the Court must then determine whether the expert's analysis is relevant. The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (citing *Viterbo*, 826 F.2d at 422).

## III. DISCUSSION

### A. Motion to Strike Plaisance's Report

The Court first addresses defendant's argument that Plaisance's expert report should be stricken because it does not comply with Federal Rule of Civil Procedure 26 and this Court's scheduling order. The scheduling order requires that expert reports fully set forth "all matters about which [the expert witness] will testify and the basis therefor" and "be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than April 15, 2016."[22] Rule 26(a)(2)(B) provides that, "unless otherwise stipulated or ordered by the court," a party must disclose its expert witnesses along with a written report prepared and signed by the witness that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Because Plaisance's report does not include many of these requirements, defendant argues the report must be stricken.

---

[22] R. Doc. 18.

Defendant's argument that plaintiff has violated Rule 26(a)(2)(B) fails to recognize that the Court has "otherwise stipulated or ordered" that an expert report must merely set forth "all matters about which they will testify and the basis therefor" and be delivered to defendant by April 15, 2016.[23] *See Knorr v. Dillard's Store Services, Inc.*, No. 04-3208, 2005 WL 2060905, at *2 (E.D. La. Aug, 22, 2005) (rejecting similar argument of technical noncompliance with Rule 26 because of Court's scheduling order). Here, Plaisance's report informs defendant that he will testify as to plaintiffs' theory of how water could enter the boat's electrical system and whether a vessel that allows water intrusion in this manner is seaworthy.[24] Additionally, Plaisance notes that his conclusions are based on the hose-test videos he conducted and his more than 38 years of experience in vessel management, construction, repair, and inspection.[25] Any confusion or questions that defendant had over the basis for Plaisance's conclusions could be addressed in a deposition or through other discovery means. *See Kirkland v. Marriott International Inc.*, 416 F. Supp. 2d 480, 486 n. 2 (E.D. La. 2006) (refusing to strike report with information that was difficult to understand because information was clarified in subsequent deposition); *Stahl v.*

---

[23] R. Doc. 18 at 2.
[24] R. Doc. 29-2 at 2-3.
[25] *Id.* at 1.

11

*Novartis Pharmaceuticals Corp.*, No. 99-1048, 2000 WL 33915847, at *2 (E.D. La. Nov. 29, 2000) (same). Finally, plaintiff submitted Plaisance's report on April 15, 2016, the deadline for expert reports.[26] Therefore, Plaisance's report is timely and adequately sets forth the matters about which he will testify and the basis for his opinions.

Furthermore, although Plaisance's report did not include information like the exhibits used to support his conclusions, his resume, his compensation, or a list of other cases in which he has provided expert testimony, plaintiffs later gave defendant the photographic exhibits that Plaisance relied on, as well as copies of the hose-test videos.[27] Plaintiffs also gave defendant documentation of Plaisance's compensation and his resume, which includes his qualifications and a list of cases in which Plaisance has testified as an expert either at trial or by deposition.[28] Defendant had all of this information before Plaisance's scheduled deposition and was not prejudiced by the absence of this information from Plaisance's report.

For all of the foregoing reasons, plaintiff's technical noncompliance with Rule 26 does not warrant this Court striking Plaisance's report. *See Knorr*, 2005 WL 2060905 at *2.

---

[26] R. Doc. 29 at 2.
[27] R. Doc. 37 at 14.
[28] R. Doc. 37-13.

### B.     Admissibility of Hose-Test Videos

Because the resolution of defendant's *Daubert* motion is dependent in part on the validity and admissibility of Plaisance's hose-test videos, the Court will address the videos first.  This Court has broad discretion to admit evidence of experimental tests.  *See Williams v. Briggs Co.*, 62 F.3d 703, 707-08 (5th Cir. 1995); *Barnes v. Gen. Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977).  The standard by which the Court determines the admissibility of experimental evidence depends upon whether it is being offered to reenact an event that occurred or to demonstrate general scientific principles.  *See Wallace v. Gen. Motors Corp.*, No. 94-2627, 1997 WL 269498, at *1 (E.D. La. May 19, 1997) (citing *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1402 (8th Cir. 1994)); *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir. 1993).

If the experimental evidence is a simulation or recreation of the event in question, then the recreation and the event it seeks to replicate must be substantially similar.  *Williams*, 62 F.3d at 707.  The conditions of experimental tests need not be identical to the case at hand, but should be "nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed." *Barnes*, 547 F.2d at 277.  The purpose behind the substantial similarity requirement is to avoid

13

the risk of misleading members of the jury who may attach exaggerated significance to the evidence. *See McKnight*, 36 F.3d at 1402 (citing *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 264 (1st Cir.1993)).

If the proffered evidence is not meant to recreate an event but instead simply demonstrate scientific principles, then the substantial similarity requirement does not apply. *See McCune v. Graco Children's Products, Inc.*, 495 F. App'x 535, 540 (5th Cir. 2012) ("if a party offers the demonstrative evidence only as an illustration of general scientific principles . . . it need not pass this 'substantial similarity' test" (quoting *Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir. 2006))). Demonstrative evidence that is offered only as an illustration of abstract scientific principles must not too closely resemble the actual events and circumstances of the case, *Riley v. Ford Motor Co.*, No. 09-148, 2011 WL 3236109, at *4 (S.D. Miss. July 27, 2011), and the demonstrative test must be properly conducted. *See generally 1 McCormick On Evid.* § 202 (7th ed.). Additionally, the scientific principles that the evidence seeks to demonstrate must be relevant to the case, *Scordill v. Louisville Ladder Group, LLC*, No. 02-2565, 2004 WL 307475, at *7 (E.D. La. Feb. 17, 2004), and the demonstration must not be misleading. *Muth*, 461 F.3d at 566.

Defendant maintains that the hose-test videos should be excluded because they do not pass the substantial similarity test.[29] Plaintiffs respond that the videos are offered to demonstrate general scientific principles—such as the direction water travels when it splashes on the boat—and therefore need not satisfy the similarity requirement to be admitted.[30]

Although plaintiffs contend that the hose-test videos are not offered as exact simulations, the question is not one of "labels." *See McKnight*, 36 F.3d at 1402. The Court, rather than the plaintiffs' self-serving characterization of the evidence, must determine what category the proffered evidence falls under. *See id.* at 1402-03 (rejecting proponent's characterization of evidence as demonstrating scientific principles and instead finding that evidence sought to recreate events that gave rise to trial"); *see also Muth*, 461 F.3d at 566-67 (affirming district court's rejection of proponent's characterization of evidence as only demonstrating scientific principles, not as recreation); *Dunn v. Nexgrill Industries, Inc.*, 636 F.3d 1049, 1056 (8th Cir. 2011) (same).

Plaisance's report states that he conducted the hose-test videos to "determine how water was entering the machinery space wire harness," and

---

[29] R. Doc. 29-1 at 18-20.
[30] R. Doc. 37 at 18.

15

that he viewed the results of his test as "evidence of how the water was entering" the boat's mechanical system.[31] These statements and plaintiffs' theory of the case that the water intrusion occurred in part due to routine washing of the boat's wet bar,[32] establish that this evidence is offered not as a demonstration of general scientific principles but instead as a recreation of the events that gave rise to this case.[33] Therefore, the test must satisfy the substantial similarity requirement to be admissible.

A comparison of the facts of this case and the hose-test videos reveals that the videos fail the substantial similarity test. As *Barnes* establishes, the conditions of the test and the occurrence it seeks to reenact do not have to be "precisely reproduced," but they must be similar enough to "afford a fair comparison in respect to the particular issue to which the test is directed." 547 F.2d at 277. The burden is on the party offering the experiments to lay a "proper foundation demonstrating a similarity of circumstances and conditions." *Id.* Plaisance's test on the *Budget Bender* applies a continuous stream of water from a garden hose directly at the junction between the back

---

[31] R. Doc. 29-2 at 2.
[32] *See, e.g.*, R. Doc. 29-2 at 2; R. Doc. 36 at 4.
[33] Even if the Court agreed that this evidence was meant to demonstrate general scientific principles, the demonstrations would not be helpful to the trier of fact. Here, the scientific principle is apparently that water will flow downward, which is also known as gravity. The Court does not need a video demonstration of gravity to understand how it works.

16

of the wet bar and the boat's wall. The videos do not indicate how long the hose has been running, if any water was applied before filming began, the pressure of the water coming out of the hose, if the pressure was increased or decreased before filming began, or the edits that have been made to the videos.[34] The videos and Plaisance's report also do not detail any information on how the *Budget Bender* was washed, including the length of time it is washed, the type of hose used, or the water pressure applied. These critical missing details make a "fair comparison" impossible. *Barnes*, 547 F.2d at 277; *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1337 (11th Cir. 2011) (noting that the lack of specifics about the tests on the videos made it "impossible to assess whether the video was fairly and honestly made under circumstances and conditions substantially similar" to plaintiff's accident (internal quotation omitted)). Therefore, because plaintiffs have not satisfied their burden in establishing substantial similarity, the hose-test videos are excluded.

### C. *Daubert*

Finally, defendant moves this Court to prohibit Plaisance from testifying under Federal Rule of Evidence 702 and *Daubert*. Plaisance's

---

[34] When asked for information in his deposition on how he conducted the test, Plaisance gave a rambling response that failed to answer the question or supply the missing details. R. Doc. 49-1 at 9.

report opines that based on the hose tests and his physical observations of the *Budget Bender*, "water entering the DC wiring harness over time . . . , was a direct result of a defective design and workmanship by Formula."[35] This defective design resulted in "electrical shorting which lead to the fire."[36] He also opines that the entry of water into the DC wiring harness in the manner he described renders the *Budget Bender* unseaworthy and dangerous.[37]

*Daubert* requires that expert testimony be reliable at each and every step to be admissible, and this reliability analysis applies to all aspects of the expert's testimony. *Knight*, 482 F.3d at 355. This includes not only the methodology behind the expert's opinion but also the connection of the facts and/or data to the opinion itself. *Id.*

Plaisance bases his opinion of the alleged defect on the hose tests. The Supreme Court in *Daubert* noted that the existence and maintenance of standards and controls bears on whether a scientific test is reliable. 509 U.S. at 594. Viewing the hose-test videos makes clear that these tests lacked any form of meaningful standards and controls. As described above, Plaisance does not supply any of the critical information necessary to assess the tests' reliability, most importantly how long the hoses had been running, the

---

[35] R. Doc. 29-2 at 3.
[36] *Id.*
[37] *Id.*

pressure of the water applied to the wet bar, what edits were made to the videos, and if any water was applied to the wet bar before filming began. Not controlling for these factors or identifying critical standards for these tests indicates that the methodology behind these tests is unreliable. Therefore, the Court will prohibit any of Plaisance's testimony based on the hose tests.

Plaisance's second opinion that the boat's propensity to allow water intrusion renders the boat unseaworthy and dangerous is likewise excludable because the opinion is based on the unreliable hose tests. The Court does not quarrel with the proposition that if a vessel allows for water intrusion into its mechanical system during normal operation and regular maintenance, it would be unseaworthy and potentially dangerous. But what is absent here is any reliable methodology establishing the predicate facts for the unseaworthiness conclusion. Given that the Court has excluded the hose-test evidence, there is simply no reliable methodology to support Plaisance's opinion, and there is no evidentiary basis for his testimony.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to exclude the hose-test videos and to prohibit Captain Guy Plaisance from testifying.

New Orleans, Louisiana, this __4th__ day of November, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE